In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2878

JOHN E. BEDNARSKI,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 C 152—**Barbara B. Crabb**, *Chief Judge.*

ARGUED JANUARY 5, 2007—DECIDED MARCH 23, 2007

Before FLAUM, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.*  John E. Bednarski pleaded guilty to distributing and receiving child pornography via the Internet and was sentenced to seventy months' imprisonment. Bednarski did not appeal his sentence, but nearly one year later he filed a petition for habeas corpus relief seeking to vacate his sentence based on his trial counsel's alleged ineffective assistance for failing to advise him of the pros and cons of taking an appeal. The district court denied Bednarski's petition. Bednarski appeals, and we affirm.

I.

Throughout 2003, Federal Bureau of Investigation ("FBI") agents tracked the Yahoo! ID of a user who posted in various Yahoo! Groups (Internet chatrooms) multiple pictures of pre-pubescent girls and boys engaged in sexually explicit acts. Through the use of administrative subpoenas, the FBI agents identified John E. Bednarski as the individual associated with the Yahoo! ID. In February 2004, FBI agents executed a search warrant for Bednarski's residence, during which they seized his home computer and related equipment. During the FBI agents' execution of the search warrant, Bednarski admitted using his computer to post and download images of child pornography from Yahoo! Groups. The FBI later completed a forensic examination of Bednarski's computer hard drive, and found 405 files containing child pornography.

In November 2004, the government filed a one-count information against Bednarski in the Western District of Wisconsin, alleging that he knowingly possessed a computer hard drive containing multiple depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(b). One month later, the information was amended to include a forfeiture count for Bednarski's computer equipment pursuant to 18 U.S.C. § 2253. Bednarski hired attorney Jared Redfield to represent him.

With attorney Redfield's assistance, Bednarski reached a written plea agreement with the government, which was memorialized in a letter dated December 22, 2004. Bednarski agreed to waive indictment and to enter an unconditional guilty plea on both counts in the amended information. In exchange for his guilty plea, the government recommended that Bednarski receive a sentence

reduction for acceptance of responsibility and his timely notice of his intent to plead guilty.

On January 11, 2005, Bednarski appeared before the district court and entered his guilty plea. During the course of the plea hearing, Bednarski admitted, inter alia, that: (1) no one promised him that he was going to receive a specific sentence; (2) he could be sentenced to up to ten years' imprisonment upon conviction; and (3) his sentence would be based on the United States Sentencing Guidelines (the "Guidelines"). Bednarski further agreed that the Guidelines would be applicable in their entirety. Following the plea hearing, Bednarski was released until his sentencing hearing, provided that he complied with specified conditions, including neither using a computer nor possessing sexually explicit materials.

On March 25, 2005, Bednarski appeared before the district court for sentencing. Bednarski's presentence report ("PSR") recommended a Guideline sentence range of seventy to eighty-seven months' imprisonment. The PSR's Guideline calculation included a three-point reduction for Bednarski's acceptance of responsibility and his timely notice of his guilty plea. During the hearing, Bednarski stated that he had read the PSR and had no objections to anything in the report. Bednarski's attorney stated that while Bednarski was prepared to accept the district court's sentence, he requested that the district court depart from the Guidelines and sentence Bednarski to probation, which would allow him to continue to serve as the primary care provider for his ailing wife.[1] The district court denied Bednarski's request and sentenced him to seventy months'

---

[1] Bednarski stated that both his wife and his daughter are afflicted with multiple sclerosis, and he was his wife's primary care-giver prior to his incarceration.

imprisonment followed by a three-year term of supervised release. The district court then informed Bednarski that he had the right to appeal his sentence if he believed it was illegal in any respect, and that his then-attorney, Redfield, was obligated to continue to represent him unless he was relieved of that obligation by the court. At the conclusion of the sentencing hearing, the district court found that Bednarski was neither a flight risk nor a danger to the community and stayed the execution of his sentence of imprisonment until April 14, 2005. Bednarski did not file a notice to appeal or pursue an appeal of his sentence.

Two days short of the one-year anniversary of his sentencing, Bednarski filed a petition for habeas relief pursuant to 28 U.S.C. § 2255, seeking to vacate his sentence based on ineffective assistance of counsel. Specifically, Bednarski alleged that attorney Redfield failed to consult with him regarding the merits of appealing his sentence. Bednarski admits, however, that he never actually asked attorney Redfield to file an appeal or even a notice of appeal on his behalf.

On June 8, 2006, the district court held an evidentiary hearing. Bednarski testified that immediately after he received his sentence, he turned to attorney Redfield and said, "I think we got blindsided." He testified that he made that statement based on his conversations with attorney Redfield, during which attorney Redfield allegedly relayed a conversation with an FBI agent who told attorney Redfield that he "didn't think anything was going to come of this." Bednarski also testified regarding conversations he allegedly had with attorney Redfield following the sentencing hearing during their trip from Madison

back to Stevens Point.[2] He stated that during the return trip, he asked attorney Redfield: "Do you think we should appeal the sentence?" According to Bednarski, attorney Redfield surprisedly responded: "You want to appeal?" Bednarski testified that he responded: "Don't you think we should?" He claims that attorney Redfield never provided him with an answer to that question, nor did he address the advantages and disadvantages of filing an appeal. Instead, Bednarski testified that once he and attorney Redfield arrived back at attorney Redfield's office, attorney Redfield merely wished him luck and sent him on his way. Bednarski testified that he could not recall whether he spoke with attorney Redfield over the next ten days, i.e., the time in which Bednarski had to file his notice of appeal. Finally, on cross-examination, Bednarski stated that he could not recall whether attorney Redfield and he had discussed filing an appeal prior to entering his guilty plea.

At that same evidentiary hearing, attorney Redfield testified that he had been an attorney for forty years, practicing in bankruptcy, divorce, and criminal defense. Attorney Redfield further testified that he was aware of the appeals process and would have filed a notice of appeal upon Bednarski's request, as he had done in a separate criminal trial he handled for another client a few months earlier. He also testified that after Bednarski and he discussed the overwhelming and irrefutable evidence of Bednarski's guilt, they decided that the best option was for Bednarski to plead guilty, begin treatment with a

---

[2] Bednarski testified that because he was unfamiliar with the Madison area, attorney Redfield drove him from Stevens Point to Madison for the plea and sentencing hearings.

psychiatrist, express complete remorse, and hope that the district court considered Bednarski's caretaking for his wife to be a mitigating factor when determining his sentence. Attorney Redfield stated that, prior to Bednarski entering his guilty plea, Bednarski and he discussed the effect a guilty plea would have on Bednarski's appeal prospects. He testified that he explained to Bednarski that complete cooperation with the government would fore-close most appealable issues and that Bednarski was "virtually giving up any right to appeal by going right to the plea and sentencing."

Attorney Redfield also provided a starkly different recollection of his conversations with Bednarski during their trips to and from Madison. He stated that on the way to Bednarski's plea hearing, he specifically ex-plained to Bednarski that a plea of guilty would severely limit his appeal options and that Bednarski should be prepared to accept the district court's sentence, which "very, very, very likely . . . would be prison." Attorney Redfield further testified that during their drive together to the sentencing hearing, Bednarski was quite aware of what the government was offering and that attorney Redfield planned to argue that Bednarski's prison time should be reduced in favor of probation so that Bednarski could continue to care for his wife. Attorney Redfield stated that he told Bednarski that if he wanted to appeal, then he would file the notice of appeal, but he would not handle the actual appeal because he did not take appellate cases. Following the sentencing hearing, attorney Redfield recalled that Bednarski was surprised by the harshness of the sentence, but he was taken aback at Bednarski's reaction because Bednarski was sentenced at the bottom of the applicable Guideline imprisonment range. Finally, attorney Redfield testified that during the drive back to

Stevens Point, he did not recall discussing whether to appeal, but he definitively stated that Bednarski "certainly didn't ask me to appeal."

After hearing Bednarski's and attorney Redfield's testimony, the district court informed the parties that it would deny Bednarski's petition. Four days later, the district court entered its written order. In that order, the district court stated:

> I find as fact that Redfield gave [Bednarski] advice about filing an appeal, starting in the early stages of the case, and made it clear to [Bednarski] that if he followed the recommended course of cooperation and contrition he would have few if any chances of taking a successful appeal. I do not find [Bednarski] credible when he says now that on the way back to Stevens Point he asked Redfield about appealing and Redfield ignored his questions. [Bednarski] has a strong motivation to remember the conversation incorrectly, whereas it is hard to imagine any reason Redfield would have had for not responding to [Bednarski's] questions. At the least, Redfield would have reminded [Bednarski] about the compromises he had made in his effort to obtain the lowest possible sentence. And if [Bednarski] was not persuaded that he had no chance of succeeding on appeal, what reason would Redfield have had to ignore [Bednarski's] desire to appeal? Filing a notice of appeal is a simple procedure.

*United States v. Bednarski*, No. 06-R-0196-C-01, slip op. at 5 (W.D. Wis. June 12, 2006). The district court also concluded that even if Bednarski were correct that attorney Redfield ignored his questions regarding an appeal, attorney Redfield provided Bednarski with advice throughout his representation "sufficient to fulfill his obligations to his

client under *Flores-Ortega*." *Id.* (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). The district court further stated that "[g]iven the previous discussion the two had had, it was reasonable for Redfield to conclude from [Bednarski's] failure to ask expressly about taking an appeal that although [Bednarski] was disappointed about his sentence, he understood that an appeal would be futile." *Id.* Accordingly, the district court denied Bednarski's § 2255 petition. Bednarski appeals.

## II.

Bednarski argues on appeal that the district court erred in denying his habeas petition, claiming that attorney Redfield's failure to apprise him of the advantages and disadvantages of appealing his sentence constituted ineffective assistance of counsel. "On appeal from a denial of habeas corpus relief, we review issues of law de novo and issues of fact for clear error." *Adams v. Bertrand*, 453 F.3d 428, 432 (7th Cir. 2006) (citations omitted). The sole basis upon which Bednarski argues for habeas relief is that he received ineffective assistance of counsel, which "is a mixed question of law and fact reviewed de novo, with a strong presumption that his attorney performed effectively." *United States v. Fudge*, 325 F.3d 910, 923 (7th Cir. 2003).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme

Court set forth its now familiar two-part test for determining ineffective assistance of counsel claims, holding a defendant must demonstrate that the representation: (1) "fell below an objective standard of reasonableness," *id.* at 688; and (2) prejudiced the defendant, *id.* at 694.

In this case, Bednarski claims that while he never instructed attorney Redfield to file a notice of appeal or an appeal on his behalf, attorney Redfield nonetheless provided ineffective assistance of counsel by failing to consult with him regarding the advantages and disadvantages of appealing his sentence. Our determination of this case is controlled by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), in which the Supreme Court applied the *Strickland* test to a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. *Id.* at 476-77. In *Flores-Ortega*, the Court stated that in cases such as this one where the defendant does not instruct his counsel to file an appeal or notice of appeal, the ineffective assistance of counsel inquiry begins with a determination of whether counsel consulted with the defendant about the possibility of appeal.[3] *Flores-Ortega*, 528 U.S. at 478. The Court defined "consult" as "advising the defendant about the

---

[3] The *Flores-Ortega* Court also held that an attorney who disregards his client's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable, *id.* at 477, and that where counsel's error leads to "the forfeiture of a proceeding itself," prejudice will be presumed, *id.* at 483-84. Accordingly, " '[w]hen counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would likely have had merit.' " *Id.* at 477 (quoting *Peguero v. United States*, 526 U.S. 23, 28 (1999) (internal brackets omitted)).

advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega,* 528 U.S. at 478. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.*

Having heard both Bednarski's and attorney Redfield's testimony during the evidentiary hearing, the district court found that Bednarski's self-serving testimony was not credible regarding his alleged conversations with attorney Redfield on their drive back from the sentencing hearing. Instead, the district court found attorney Redfield credible when he testified that he had consulted with Bednarski throughout his representation regarding the impact a guilty plea would have on Bednarski's ability to appeal his sentence. The district court's findings of fact are supported by the record, and Bednarski has presented no basis for us to conclude that those findings were clearly erroneous. Accordingly, we affirm the district court's holding that "the advice Redfield provided his client throughout his representation was sufficient to fulfill his obligations to his client under *Flores-Ortega.*" *Bednarski*, No. 06-R-0196-C-01, slip op. at 5.

Because the recollections of the conversation on the return trip from the sentencing hearing are vague, it is worth noting that even if the district court had concluded that attorney Redfield had not properly consulted with Bednarski regarding an appeal, Bednarski's petition would have failed nonetheless under *Flores-Ortega.* In *Flores-Ortega*, the Court stated that to satisfy the first prong of the *Strickland* test, namely that counsel's performance

was deficient, the defendant must show that his counsel's failure to consult resulted in a deficient performance because either:

> (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 479-80. A showing of either of these factors would prove deficiency and thus satisfy the first *Strickland* prong. *Id.* at 479-80. The *Flores-Ortega* Court noted that "[a]lthough not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea." *Id.* The Court explained that a guilty plea is significant to the deficiency analysis "because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* The Court cautioned, however, that in cases where the defendant entered a guilty plea, the district court must still consider other factors, such as "whether the defendant received the sentence bargained for as part of the plea." *Id.*

Here, as the district court correctly concluded, there is nothing in the record to indicate that a rational defendant in Bednarski's position would want to appeal his sentence. Bednarski was fully apprised of the sentence range he faced prior to entering his guilty plea, and he raised no objections to the PSR. While it appears that Bednarski hoped to receive a sentence of probation, both the PSR and the district court clearly informed Bednarski that he was facing serious prison time. The district court also sentenced Bednarski to the bottom of the advisory Guideline imprisonment range for his crimes. Further, Bednarski

was repeatedly advised that by pleading guilty, his only basis for appeal would be to challenge the legality of his sentence. Based on this overwhelming evidence, we conclude that a rational defendant in Bednarski's position would not choose to appeal his sentence.

There also is no evidence in the record to indicate that Bednarski reasonably demonstrated to attorney Redfield that he was interested in appealing. Although Bednarski testified that he questioned attorney Redfield about appealing during the drive from the courthouse to Stevens Point following the sentencing hearing, the district court found Bednarski's testimony not credible on that point, and there is no reason to disrupt that finding. Accordingly, Bednarski did not satisfy the first prong of the *Strickland* test.

Finally, even if we found that Bednarski had satisfied the first prong of the *Strickland* test, his petition still would fail because he did not satisfy the second prong of the *Strickland* test. In *Flores-Ortega*, the Court stated that to satisfy the second prong of the *Strickland* test, namely prejudice from counsel's deficient performance, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. While this determination "will turn on the facts of a particular case," "evidence that there were nonfrivolous grounds for an appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485. Although nonfrivolous grounds may *support* a defendant's claim, it "is unfair to *require* a . . . defendant to demonstrate that his hypothetical appeal might have merit." *Id.* at 486 (emphasis in original). A defendant's inability to demonstrate potential merit "will

not foreclose the possibility that he can satisfy the prejudice requirement where there are other *substantial reasons* to believe that he would have appealed." *Id.* (emphasis added).

In this case, Bednarski did not proffer any nonfrivolous grounds upon which he would base an appeal of his sentence if provided with the opportunity to do so. While stating such grounds is not required, Bednarski also failed to show any substantial reasons to believe that he would have appealed. Other than expressing his desire to be sentenced to probation—a sentence that was not even mentioned in the PSR to which Bednarski did not object—he presented no other reason to lead us to conclude that he would have filed a timely appeal but for attorney Redfield's alleged failure to consult with him. Further, there is no evidence in the record that Bednarski promptly expressed a desire to appeal; rather, there is evidence to the contrary. Bednarski made no attempt to contact attorney Redfield regarding his alleged desire to file an appeal after they returned from the sentencing hearing, and Bednarski waited two days short of an entire year to file this habeas petition. Accordingly, we find that Bednarski did not satisfy either prong of the *Strickland* test.

III.

The district court did not err when it denied Bednarski's petition for habeas corpus. The district court's finding that Bednarski's counsel consulted with him regarding the advantages and disadvantages of appealing his sentence is not clearly erroneous. The district court also did not err in concluding that Bednarski's counsel provided con-

stitutionally effective assistance of counsel. The district court's denial of Bednarski's petition for habeas relief is therefore AFFIRMED.

A true Copy:

       Teste:

 

                 _____
                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*