**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 26, 2010
Decided April 19, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 09-2873

| | |
|---|---|
| ANDRE WELCH, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 1:07-cv-04333 |
| UNITED STATES OF AMERICA, | |
| *Respondent-Appellee.* | Blanche M. Manning, *Judge*. |

**O R D E R**

Andre Welch was found guilty by a jury of bank robbery, *see* 18 U.S.C. § 2113(a), and sentenced to 160 months in prison. After his conviction and sentence were affirmed on direct appeal, Welch filed a motion to vacate under 28 U.S.C. § 2255. He claimed that the federal public defender who represented him at trial was ineffective because he either mishandled a plea offer from the government or else failed even to pursue plea negotiations with prosecutors. After an evidentiary hearing, the district court denied Welch's motion. The court found that the government had never proposed, and defense counsel had never solicited, a plea agreement, and that counsel for Welch had acted reasonably given Welch's insistence on going to trial and the relative weakness of the government's case against him. We affirm the judgment.

Although no eyewitness identified him and no physical evidence at the bank tied him to the robbery, Welch was convicted in 2003 based on the testimony of his ex-wife, a former roommate, and a former coworker, all of whom identified Welch as the man in the grainy photographs taken by surveillance cameras at the bank. Welch's direct appeal took a long time to resolve because *Booker* was decided while the case was pending. *See United States v. Welch*, 368 F.3d 970 (7th Cir. 2004); *United States v. Welch*, 429 F.3d 702 (7th Cir. 2005). In 2007, after the direct appeal had finally concluded, Welch filed a pro se § 2255 motion that included the first iteration of his ineffective-assistance claim against his public defender, Imani Chiphe. This pro se motion, as well as the amended version filed after the district court had appointed counsel, centered on a claim that Chiphe had misadvised Welch about a plea proposal from the government that would require him to serve only 48 months in prison. Welch alleged that he became aware of this offer only because Chiphe had discussed it with his wife. He was not interested, he explained, in the offer because Chiphe also communicated, first to his wife and later to him directly, that at most he could get 60 to 72 months in prison even if he went to trial. But Welch added that he would have accepted the proposed deal if Chiphe had not misrepresented the maximum prison exposure and also failed to anticipate upward adjustments that would be applied for several uncharged robberies and obstruction of justice.

The district court conducted an evidentiary hearing to explore whether the 48-month plea deal had actually been offered and what, if any, discussions occurred between Chiphe and Welch regarding potential sentencing issues and the decision to go to trial. At the hearing, Welch contradicted the allegations in his pro se and counseled § 2255 motions. Now he testified that he never talked to Chiphe at all about the possibility of pleading guilty, despite his contrary descriptions of the allegedly mishandled 48-month plea deal. According to Welch, Chiphe never discussed with him potential sentencing scenarios, and, in particular, Chiphe never explained the possibility of getting credit for acceptance of responsibility if he pleaded guilty. Welch did concede, however, that he never told Chiphe he was interested in negotiating a plea agreement. And, despite his admission that he is familiar with plea negotiations after having entered guilty pleas in three previous cases, Welch also conceded that he never asked Chiphe about the possibility of pleading guilty nor did he tell Chiphe to contact the prosecutor to find out about a plea deal.

For his part, Chiphe testified that he and the prosecutor never discussed a possible plea agreement—48 months or otherwise. From the very beginning, Chiphe recounted, Welch had vehemently maintained his innocence and had agreed with Chiphe that, given the weakness of the government's evidence, the case could be won at trial. Chiphe explained that "Mr. Welch was never seriously contemplating pleading guilty," and that all along their plan was to go to trial. Chiphe did not remember whether Welch ever specifically told him not to engage in plea discussions with the government, but he added that he "had a client who was telling me he was

innocent, so, I mean, that's kind of the same thing." When Welch "told me he was innocent and told me he wanted to go to trial," Chiphe continued, "I took that to mean that he did not want to plea[d]." Chiphe disputed Welch's testimony that they did not discuss different sentencing scenarios; although he could not remember the specific dates, Chiphe confirmed that he engaged in extensive discussions with Welch about possible guidelines outcomes and their consequences, including his eligibility for an acceptance reduction under U.S.S.G. § 3E1.1. Chiphe explained that Welch was "well aware" of the possibility of guidelines adjustments based on obstruction and the uncharged robberies because he had been "very involved in the litigation of [his] case."

The prosecutor corroborated Chiphe's testimony. He explained that he never made a plea offer because it was his practice to wait for the defendant to approach him, which never happened in this case.

After the evidentiary hearing, Welch's lawyers abandoned his allegations about a 48-month plea offer. Instead, in post-hearing submissions, Welch offered an entirely new legal theory: Chiphe's failing was not that he mishandled a 48-month deal, but that he never initiated plea negotiations in the first place. The district court acknowledged this about-face when the judge rejected Welch's claim of ineffective assistance and denied his § 2255 motion. The judge highlighted Welch's shifting and contradictory assertions and determined, based on Chiphe's credible testimony corroborated by the prosecutor, that there never had been a plea offer. Regarding Welch's new theory that Chiphe should have initiated plea negotiations, the court concluded that Chiphe's decision not to approach the government did not constitute deficient performance. Welch had maintained his innocence and insisted on a trial, the court reasoned, so there was no reason for Chiphe to have believed that he would agree to a plea bargain. The court noted the weakness of the government's case and the reasonable chance of an acquittal at trial, and also gauged as significant that Welch never asked Chiphe about the possibility of a plea bargain despite his considerable experience with the criminal justice system, including the three cases that had ended with guilty pleas.

In this court Welch argues that Chiphe's performance was deficient because, says Welch, the lawyer unilaterally decided not to initiate plea negotiations. In defining what he believes to have been counsel's unfulfilled obligation, Welch insists that Chiphe either should have independently pursued a plea deal with the government or else conferred with him before deciding against that plan of action. On appeal from the denial of § 2255 relief, we review issues of law de novo and issues of fact for clear error. *Bednarski v. United States*, 481 F.3d 530, 534 (7th Cir. 2007).

Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To have prevailed on a claim of

ineffective assistance of counsel, Welch was required to establish that counsel's performance "fell below an objective standard of reasonableness" and caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We give great deference to counsel's judgment, recognizing that there is a wide range of reasonable defense strategies, *id.* at 689; *United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009), and we analyze the reasonableness of counsel's performance in the context of the facts of the particular case, *Strickland*, 466 U.S. at 688-89.

Under the circumstances, Chiphe's decision not to initiate plea negotiations was reasonable and in accordance with Welch's own insistence on going to trial. It is well-established, and Welch concedes, that counsel does not have an absolute obligation to pursue plea negotiations in every case. *See United States v. Wells*, 394 F.3d 725, 735 (9th Cir. 2005); *Armienti v. United States*, 313 F.3d 807, 814-15 (2d Cir. 2002); *United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995); *Beans v. Black*, 757 F.2d 933, 936 (8th Cir. 1985); *Dillon v. Duckworth*, 751 F.2d 895, 901 (7th Cir. 1985). Nonetheless, Welch maintains that in this case it was unreasonable for Chiphe not to approach the government about a potential plea deal because Chiphe made that decision without consulting him or even discussing the possibility of a plea. Because the prosecutor had a policy of waiting for defense counsel to initiate plea negotiations, Welch says, the only way he could have found out about the benefits of a plea agreement is if his lawyer had approached the government. Welch implicitly argues that Chiphe failed to properly inform Welch of his options and thus his decision to go to trial was ill-advised.

But there is no factual support for Welch's contention. The district court credited Chiphe's testimony and found that the lawyer had engaged in extensive conversations with Welch about trial strategy, different sentencing scenarios (including the possibility of receiving a reduction for acceptance of responsibility if Welch entered a plea), and the weaknesses of the government's case. The court also found that, throughout these discussions, Welch adamantly maintained his innocence and consistently expressed his desire to have a trial. These findings deserve great deference, *see Bednardski*, 481 F.3d at 534, and this evidence demonstrates that Chiphe competently advised his client, *see Davis v. Greiner*, 428 F.3d 81, 88-89 (2d Cir. 2005); *Moss v. United States*, 323 F.3d 445, 475 (6th Cir. 2003); *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). Based on his conversations with Welch, Chiphe reasonably understood that his client had no interest in entering a guilty plea. Although in hindsight Welch may now regret his choice, he received exactly the assistance he wanted at the time—an attorney who would aggressively fight the bank-robbery charge at trial. *See Strickland*, 466 U.S. 689-90; *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009).

To the extent that Welch argues that Chiphe should have ignored his protestations of innocence and independently approached the government about a potential plea deal, his position is untenable. We do not require counsel to do that which is futile, and thus we would not mandate that counsel engage in the empty endeavor of negotiating a plea agreement for a

client who has made it clear that he has no interest in entering a guilty plea. *See Wells*, 394 F.3d at 735 (rejecting defendant's ineffective-assistance claim when it was his unwillingness to plead guilty that prevented counsel from initiating plea negotiations); *Armienti*, 313 F.3d at 814-15 (same). More importantly, creating a rule that counsel should disregard his client's wishes would work the additional harm of jeopardizing the attorney-client relationship and the trust that counsel must establish to effectively represent his client. We would not require that counsel engage in such a betrayal, which necessarily would demonstrate a lack of faith in his client's position and have the unintended effect of preventing counsel from providing the type of reasonable assistance that the Sixth Amendment requires.

Because we agree with the district court that counsel's performance was reasonable, the prejudice prong of *Strickland* falls away. We note, however, that even now Welch continues to insist that he is innocent, which makes it difficult to believe his assertion that he would have accepted a plea deal if Chiphe had negotiated one. *See, e.g., Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) (noting that defendant's assertion of innocence undermined his contention that he would have accepted a plea deal); *Moss*, 323 F.3d at 475 (rejecting defendant's ineffective-assistance claim in part because defendant had maintained his innocence and made clear that he would not plead guilty under any circumstances); *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be unwilling to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998) (concluding that defendant could not establish prejudice when his post-trial assertions of innocence demonstrated that he would not have entered a guilty plea); *United States v. Stantini*, 85 F.3d 9, 17 (2d Cir. 1996). *But see Griffin v. United States*, 330 F.3d 733, 738 (6th Cir. 2003) (explaining that declarations of innocence were not dispositive of whether defendant would have accepted plea agreement); *Mask v. McGinnis*, 233 F.3d 132, 138 (2d Cir. 2000) (upholding district court's conclusion that overwhelming evidence against defendant might have prompted him to accept plea agreement despite protestations of innocence). Moreover, Welch did not present any evidence that the government would have been amenable to a plea deal or under what terms Welch would have accepted such an agreement. *See Gallo-Vasquez v. United States*, 402 F.3d 793, 798-99 (7th Cir. 2005) (noting that defendant must provide concrete evidence that a favorable plea offer would have been available to him); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (noting that defendant must do more than speculate about potential benefits that he was denied). Thus, Welch's claim also fails for lack of prejudice.

Accordingly, we AFFIRM the judgment of the district court.