NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 29, 2011[*]
Decided June 29, 2011

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

Nos. 10-2804 & 10-2805

| | |
|---|---|
| JAMES R. SKRZYPEK and JANICE M. SKRZYPEK, | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Petitioners-Appellants*, | |
| *v.* | Nos. 1:07-cv-05753 & 1:07-cv-05754 |
| UNITED STATES OF AMERICA | Wayne R. Andersen, |
| *Respondent-Appellee*. | *Judge*. |

**O R D E R**

James and Janice Skrzypek cheated the Chicago Housing Authority, the Internal Revenue Service, and several insurance companies out of millions of dollars. They were convicted of multiple crimes, including racketeering, 18 U.S.C. § 1962(c), mail and wire fraud, *id*. §§ 1341, 1343, bribing public officials, *id.* § 201(b), obstruction of justice,

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(c).

*id*. § 1503(a), and failure to remit withholding tax, 26 U.S.C. § 7202. Both defendants were sentenced to 90 months' imprisonment and ordered to jointly pay almost $3.5 million in restitution. After unsuccessful direct appeals, *United States v. Skrzypek*, 333 F. App'x 117 (7th Cir. 2009); *United States v. Skrzypek*, 219 F. App'x 577 (7th Cir. 2007), the Skrzypeks moved under 28 U.S.C. § 2255 to set aside their convictions on the ground that trial counsel had been ineffective in not seeking to suppress documents found in their garage during an allegedly illegal search. The district court denied their motions, and the Skrzypeks appeal. We affirm the decision.

The Skrzypeks owned several private security companies, including Federal Security, Inc. The CHA hired Federal Security to guard some of its housing projects. Although the company did not have enough guards to do the job, the Skrzypeks led CHA managers to believe that all posts were staffed and billed for these phantom employees. They also exaggerated the number of hours logged by the few guards who did work. And to cover their tracks, the Skrzypeks falsified their business records and bribed CHA employees to look the other way. Meanwhile, the Skrzypeks also pocketed taxes withheld from Federal Security employees and, in dealing with insurance carriers, understated the size of the workforce to reduce their payroll-based premiums for workers' compensation and liability policies.

On the day the Skrzypeks were indicted, a federal agent executed a warrant to search for and seize a sports car bought with proceeds of their crimes. The FBI expected to find the car in the garage behind the Skrzypeks' home, which is also located next to the office for their security companies. The agent obtained keys to the garage from Janice, and at trial he testified that the car was immediately apparent when he entered the structure but so were boxes of documents on the floor near the open, pull-down stairs leading to the garage attic. The agent added that he conducted a protective sweep by climbing about four steps "to see what was there or if anyone was there." What he saw were lots of banker's boxes like those discovered during earlier searches of the Skrzypeks' company offices. According to the agent, these boxes were labeled with notations such as "CHA Contract," "Telephone Bills Federal," "Dispatcher Logs," and "All Payroll Books." He descended the stairs without touching the boxes, and the FBI then obtained another search warrant specifically for the documents in the garage. These documents underlie the Skrzypeks' convictions for obstruction of justice because they concealed the records after receiving a Grand Jury subpoena.

When questioned at trial about the protective sweep, the FBI agent testified that such action is taken "as a matter of practice" when executing arrest or search warrants "to make sure no one is there." The "primary reason" for a protective sweep, the agent explained, is to avoid being surprised by someone who is present. He was part of the team, he continued,

that had searched the business office next to the garage, and he knew from that experience that armed employees often were present.

In their § 2255 motions, the Skrzypeks primarily argued that their trial attorneys were ineffective because they never moved to suppress the records found in the garage attic. They insisted that the FBI agent was not justified in conducting a protective sweep of the garage because, they said, he simply followed routine and did not have a reasonable belief that a dangerous person might be in the attic. Counsel's failure to move for suppression prejudiced them, the Skrzypeks assert, because the hidden records led to their convictions for obstruction of justice and—so they say—the government all but conceded that it would have had difficulty proving any part of its case without those documents.

In denying the Skrzypeks' collateral challenge, the district court deemed it particularly significant that the pull-down stairs had been lowered, suggesting that someone recently had gone up into the attic. That inference, combined with the agent's awareness that armed security guards were in the area, the court reasoned, was sufficient to justify the decision to do a cursory check of the attic to make sure no one would harm him during the search and seizure of the vehicle. The court also noted that defense counsel likely chose not to file a motion to suppress because they instead pursued a strategy of fighting the obstruction charge by attempting to show that the seized records duplicated information already in the government's possession. Given the government's overwhelming evidence against the Skrzypeks, the court concluded, even if the attic records had been excluded, there was plenty of other evidence to support the Skrzypeks' convictions, including CHA billing records, the security company's computerized records, and the testimony of Federal Security employees. In reviewing this decision, we evaluate questions of law de novo and findings of fact for clear error. *Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010).

To prevail on a claim of ineffective assistance, the movant must establish both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir.), *cert. denied*, 180 S. Ct. 562 (2009). If a movant's showing on either element is wanting, we do not have to address the other element. *Strickland*, 466 U.S. at 697; *Pole*, 570 F.3d at 934. And since any number of defense strategies may be reasonable in a given case, we give great deference to counsel's choice and evaluate the reasonableness of counsel's performance in the context of the case as a whole. *Strickland*, 466 U.S. at 688. Moreover, because in this instance the Skrzypeks criticize a choice to forgo a motion to suppress, they were required to show that a Fourth Amendment claim would have been meritorious and "that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365,

375 (1986); *see United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). As the district judge surmised, the Skrzypeks made neither showing.

A protective sweep is justified when an agent reasonably believes, based on specific, articulable facts and the rational inferences arising from those facts, that someone who could pose a danger might be present. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). If such a belief exists, then, in the interest of safety, the agent can conduct a brief, limited search of places where a person could be hiding. *Id.*; *United States v. Tapia*, 610 F.3d 505, 510 (7th Cir. 2010); *Leaf v. Shelnutt*, 400 F.3d 1070, 1087-88 (7th Cir. 2005). Here, we agree with the district court that the agent reasonably believed that a person might be lurking in the garage attic because the stairs had been pulled down and there were document boxes on the garage floor suggesting that someone was in the process of moving them. The agent also was aware that the garage was within a few feet of the Skrzypeks' business office where armed employees had been present the last time the FBI conducted a search. And too, as the agent knew, some Federal Security employees had been extensively involved in helping the Skrzypeks conceal their fraud. These factors provided the grounds for a reasonable suspicion that an armed employee with a stake in the outcome of the investigation could be in the attic. And the agent's search was certainly limited to a cursory inspection of the attic because he ascended only a few steps—just enough to see into the space and scan for potential threats.

Even if the suppression motion had been arguable, the Skrzypeks' attorneys had a strategic reason for choosing not to go that route. The district court explained that, during the Skrzypeks' trial, counsel opted to minimize the importance of the seized documents in an effort to defeat the obstruction charge by showing that the attic records hadn't really been concealed because the government already had the same information from other sources. In evaluating counsel's performance, we start with a "strong presumption" that counsel provided effective representation. *Bednarski v. United States*, 481 F.3d 530, 535 (7th Cir. 2007). Moreover, when it appears that counsel has made a tactical decision, we will not play "Monday-morning quarterback" and second guess the attorney's choice. *Smith v. Gaetz*, 565 F.3d 346, 354 (7th Cir. 2009). If the documents largely duplicated the information the government already had (and the Skrzypeks have never contended otherwise), then counsel had no reason to invest time and effort trying to stop the government from using the attic records at trial. Nor could the Skrzypeks have been prejudiced by the admission of evidence that already was part of the government's overwhelming case against them.

Accordingly, in both appeals we **AFFIRM** the judgment of the district court.