Anthony ARMIENTI, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

Docket No. 01–2401.

United States Court of Appeals, Second Circuit.

Argued Feb. 25, 2002.

Decided Dec. 19, 2002.

Philip R. Schatz, New York, NY, for the Petitioner–Appellant.

Jo Ann M. Navickas, Asst. U.S. Atty., (Alan Vinegrad, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., Broooklyn, N.Y. on the brief) for Respondent–Appellee.

Before: KEARSE and JACOBS, Circuit Judges, and JONES,* District Judge.

JONES, District Judge:

Petitioner Anthony Armienti appeals the May 18, 2001 denial of a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, by Judge Sterling Johnson, Jr., of the United States District Court for the Eastern District of New York. Armienti challenges his December 15, 1993 conviction for various firearms offenses following a jury trial before Judge Johnson. He asserts that his Sixth Amendment right to effective assistance of counsel was violated because his counsel labored under a conflict of interest that adversely affected his counsel's performance. After conducting a hearing, the district court concluded that Armienti had failed to show that he and his lawyer shared an actual conflict or that he had been adversely affected by the alleged conflict. We affirm the district court's findings, concluding that Armienti has not established an actual conflict that adversely affected his lawyer's performance.

## I. BACKGROUND

On December 15, 1993, petitioner Anthony Armienti was convicted of various firearms offenses following a jury trial before Judge Sterling Johnson, Jr., in the United States District Court for the Eastern District of New York. Armienti was sentenced to 115 months in prison followed by three years of supervised release and fined $50,000. The conviction was affirmed on appeal. *See United States v. Sasso,* 59 F.3d 341 (2d Cir.1995).

On June 13, 1996, Armienti filed a petition for habeas corpus pursuant to 28 U.S.C. § 2255, in which he sought to vacate his conviction on the ground that his Sixth Amendment right to conflict-free counsel had been violated because his counsel at trial, Gerald Shargel, was then under criminal investigation by the same office prosecuting Armienti, the United States Attorney for the Eastern District of New York. Without conducting an evidentiary hearing, the district court denied Armienti's petition and denied him a certificate of appealability, finding that Shargel had no potential or actual conflict of interest that could result in prejudice to Armienti.

We then granted Armienti a certificate of appealability as to whether he was entitled to an evidentiary hearing and whether

---

* Honorable Barbara S. Jones of the United States District Court for the Southern District of New York, sitting by designation.

he should be able to amend his habeas corpus petition to include evidence that an actual conflict adversely affected his lawyer's performance. Thereafter, we recognized that a lawyer in Shargel's alleged circumstance might seek the goodwill of the investigating office for his own benefit, which might be contrary to the best interest of his client, and found that Armienti had presented a plausible claim that his lawyer had an actual conflict. We vacated the judgment of the district court denying habeas corpus and remanded for "an evidentiary hearing as to whether [Armienti's] attorney's alleged conflict of interest constituted an actual conflict that adversely affected his performance" as Armienti's counsel. *Armienti v. United States*, 234 F.3d 820, 821 (2d Cir.2000) (*"Armienti I"*).

In accordance with our decision, the district court held an evidentiary hearing regarding Armienti's conflict of interest claims on February 2, 2001. At that hearing, Armienti alleged that Shargel failed (1) to pursue plea negotiations and the possibility of a cooperation agreement on Armienti's behalf as a result of both Shargel's own pending investigation and his alleged connection to the Gambino crime family; (2) to properly prepare for trial and conduct a vigorous defense at trial because of his preoccupation with the pending investigation; (3) to cross-examine one of the Government's key witnesses effectively at trial; and (4) to submit a financial disclosure statement to the probation department to be used in connection with Armienti's pre-sentence report.[1]

At the hearing, Armienti testified and presented the testimony of the prosecutor, Ellen Corcella, and his defense lawyers, Michael Padden, Gerald Shargel, and Jeffrey Lichtman. After crediting the testimony of the prosecutor and the three defense lawyers and finding "much of [Armienti's] uncorroborated testimony to lack credibility," the district court found that Armienti had not sustained his burden of proving that Shargel labored under an actual conflict of interest. The district court further found that even if an actual conflict could be said to have existed, Armienti failed to show that such conflict had an adverse effect on Shargel's performance. *Armienti v. United States*, No. 96 Civ. 2999, slip op. at 14, 19 (E.D.N.Y. May 11, 2001). We agree and affirm the decision of the district court.[2]

## II. CONFLICT: THE LEGAL STANDARD

"The right to counsel under the Sixth Amendment entails 'a correlative right to representation that is free from conflicts of interest.'" *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994) (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)). A defendant will have suffered ineffective assistance of counsel in violation of his Sixth Amendment rights if his attorney has a "per se" conflict, a potential conflict of interest that results in prejudice to the defendant, or an actual conflict of interest that adversely affects the attorney's performance. *See Levy*, 25 F.3d at 152; *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993); *Armienti I*, 234 F.3d at 823–24. We have already determined that the only conflict of this kind that Armienti can assert is actual conflict. *Armienti I*, 234 F.3d at 824.

---

1. Armienti did not pursue this fourth claim in his brief.

2. In view of our finding that no actual conflict existed, Armienti's request on this appeal for an additional hearing as to the trial judge's duty of inquiry into the possibility of a conflict of interest is moot.

■ To prevail on a Sixth Amendment claim based upon the actual conflict standard, a defendant must show that an actual conflict existed and, then, must demonstrate that this conflict adversely affected defense counsel's performance. *See United States v. Schwarz*, 283 F.3d 76, 91–92 (2d Cir.2002) ("The finding of an actual conflict ... is only the first step in determining whether [a defendant] has established his claim of ineffective assistance of counsel."); *see also Levy*, 25 F.3d at 157; *United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir.1995). An actual conflict between a lawyer and his client exists "when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Armienti I*, 234 F.3d at 824 (quoting *Winkler*, 7 F.3d at 307).

■ Once the defendant has established that an actual conflict exists, "he need not prove prejudice, but simply that a 'lapse of representation' resulted from the conflict." *Malpiedi*, 62 F.3d at 469 (quoting *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir.1986)) (citations omitted). That is, the defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Levy*, 25 F.3d at 157 (quoting *Winkler*, 7 F.3d at 309). As we find that Armienti has failed to establish that his lawyer had an actual conflict of interest, we need not consider whether Shargel lapsed in his representation of Armienti.

### III. ARMIENTI FAILED TO ADDUCE EVIDENCE OF ACTUAL CONFLICT

■ As the question of whether a defendant has established an actual conflict of interest is a mixed question of law and fact, we exercise *de novo* review on the issues of law, *see United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir.1997) (citing *Winkler*, 7 F.3d at 308), while reviewing the factual findings of the district court for clear error. *See Flores v. Demskie*, 215 F.3d 293, 300 (2d Cir.), *cert. denied*, 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 517 (2000). With this in mind, we turn to the question of whether Armienti proved at his evidentiary hearing that his lawyer, Shargel, labored under an actual conflict of interest.

■ Armienti's principal claim is that Shargel failed to encourage or explore cooperation with the Government on Armienti's behalf because of Shargel's alleged ties to the Gambino organized crime family. Specifically, Armienti claims that Shargel prevented him from cooperating with the Government with respect to information about Robert Sasso, Sr., his co-defendant's father and an associate of the Gambino family, who had been indicted by the Eastern District of New York around the same time as Armienti. As an initial matter, there is no evidence that Armienti had any information to offer against Sasso, Sr. Nor is there any convincing evidence that the prosecution was interested in obtaining information from Armienti about Sasso, Sr.

More critical to the failure of Armienti's claim, however, is the lack of evidence of Shargel's alleged loyalties to the Gambino organized crime family. Armienti claims that Shargel was "house counsel" to the Gambino family and received benefactor payments under the table from that same family, but he adduced no evidence to that effect at the hearing. To support this assertion, Armienti relies on Shargel's disqualification from representing any of the defendants in a 1991 racketeering case that targeted the Gambino crime family enterprise. The disqualification resulted

from the fact that evidence the Government intended to offer at the trial posed serious conflicts were Shargel to remain as trial counsel. *See United States v. Gotti,* 771 F.Supp. 552 (E.D.N.Y.1991). The disqualification was not a finding that the allegations were true.[3] In fact, after four years of investigation into Shargel's ties to the Gambino family, no charges were brought.

Further, Armienti presented no evidence in this case that Shargel was in any way compensated for taking Armienti's case by the Gambino family. In fact, Armienti came to hire Shargel through the recommendation of his brother, an assistant district attorney for the Manhattan District Attorney's Office.

Moreover, the facts surrounding Armienti's decision not to cooperate do not support his theory that Shargel failed to explore cooperation for his client because of his alleged involvement with the Gambino family. To the contrary, they demonstrate that Armienti himself adamantly refused to consider cooperation. Significantly, the evidence shows that Armienti refused to consider cooperating with the Government, before and while Shargel was his attorney. After his arrest, Armienti was initially represented by Michael Padden of the Federal Public Defenders Office. Both Corcella, the prosecutor, and Padden recall that Corcella communicated an interest in Armienti's cooperation to Padden. Corcella testified that Padden left her with the impression that Armienti had no interest in cooperating and that the case would go to trial.

Padden also testified that he spoke to Armienti about cooperation with the prosecution and received no response on the matter from Armienti. At the evidentiary hearing, Armienti originally denied that Padden had told him about the Government's interest in his cooperation. Later, though, he admitted that Padden had raised the issue of cooperation with him and had spoken to him about the possibility of cooperating against Robert Sasso, Jr., his co-defendant and friend. He told Padden he was not interested in the possibility of a plea and was planning to contest the charges.

Shargel conceded that, when he took over the case, he did not discuss the option of a plea with Armienti. It was his understanding—based on conversations with both Armienti and Padden—that Armienti had no desire to plead but rather wished to proceed to trial. In addition, both Shargel and Corcella regarded the case as a triable one. Shargel noted that if the case had not been a triable one, he would have encouraged Armienti to plead even if Armienti had been against such an idea. Lichtman, Shargel's assistant, also understood that any plea negotiations that might have resolved the case prior to trial had been completed and that, in fact, Shargel had been hired specifically to try the case. Lichtman recounted that Armienti only in-

**3.** Principally, the evidence was that Shargel received payments from John Gotti, the alleged head of the Gambino family, for the defense of other members of the enterprise. This evidence was probative of the existence of the enterprise, and the district court concluded that Shargel ought to be called as a defense witness. He also concluded that, were Shargel permitted to participate at trial because of evidence of his involvement, he would be put in the position of an unsworn witness arguing implicitly for the propriety of his own conduct as well as explicitly that the Government had failed to prove its case against his client. *Gotti,* 771 F.Supp. at 565. The district court also disqualified Shargel for a number of other reasons, including the fact that he had previously represented one of the Government's witnesses. *Id.* at 563.

dicated his intent to go to trial, never mentioning a desire to plead or cooperate.

Armienti himself admitted that he never raised the subject of a plea or cooperation with Shargel. Moreover, Armienti testified at the district court hearing that he would not have cooperated then and he still would not cooperate with the Government now, even assuming the opportunity to cooperate had presented itself. Under these circumstances, it is clear that the decision to forgo a plea does not itself serve as evidence of a conflict. Accordingly, Armienti has failed to prove an actual conflict based upon Shargel's alleged loyalties to the Gambino family.

In addition, Armienti argues that the ongoing investigation into Shargel's conduct compromised Shargel's ability to effectively negotiate a plea on his behalf and, therefore, evidences an actual conflict. The testimony established that as of January of 1991 Shargel became the target of a pending grand jury investigation in the Eastern District of New York. The inquiry involved allegations of tax fraud and obstruction of justice arising out of the United States Attorney's investigation of the racketeering activities of the Gambino family. When Shargel replaced Armienti's first counsel, Padden, in September 1993, the investigation into Shargel's conduct was still under way.

As the district court found, though, the record does not support Armienti's assertion that the investigation compromised Shargel and prevented him from being an effective advocate. First, Armienti's concern that Shargel did not command the respect of the prosecutor's office is un-

founded. The prosecutor, Corcella, testified that the existence of the investigation played no role in any of her decisions in the case. Also, she was hardly aware of the investigation, explaining that she was not officially informed of any pending investigation targeting Shargel. Rather, she had heard about "some sort of investigation" of Shargel at some point during the time Armienti was being tried, but never considered herself under any obligation to request a *Curcio* hearing, *see United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to obtain a conflict of interest waiver from Armienti. Indeed, far from expressing concern about Shargel's abilities, Corcella called him a "fine advocate on behalf of Mr. Armienti" and a "vigorous opponent, in all respects."

Additionally, Armienti did not present evidence that the judgment of the prosecutor's office, as a whole, was affected by the investigation. Rather, the evidence showed that while Shargel was under investigation, he had a number of clients during this time who pleaded guilty. This controverts Armienti's argument that Shargel, as the target of an investigation, did not command sufficient respect from the prosecutor's office to negotiate dispositions.

Finally, the evidence showed that Shargel did not believe himself to be under investigation at the time of the trial, making him no more or less likely to engage in vigorous negotiations with the prosecutor's office.[4] In past cases, the Government, on its own accord, had raised the conflict in court, and a number of courts had obtained *Curcio* waivers in connection with Shar-

**4.** This Court expressed concern on Armienti's first appeal that a defense attorney who was also under investigation might seek the goodwill of the prosecutor's office for himself B contrary to the best interest of his client. *Armienti I*, 234 F.3d at 825. Armienti does not make this claim in the present appeal. Indeed, if Shargel had sought to curry favor with the prosecutor's office, he would have been more likely, not less likely, to pursue a plea.

gel's potential conflict of interest due to the investigation. In this case, though, the prosecutor never raised the conflict issue with the court. The prosecutor's failure to raise the conflict issue with the court led Shargel to believe that the prosecutor's office had closed the investigation, which at that point was close to three years old. Given the age of the investigation and the prosecutor's failure to bring it to the court's attention, it was reasonable for Shargel to believe, as he testified, that the investigation was at an end at the time of his representation of Armienti.[5]

Armienti disputed Shargel's testimony that he did not know he was still under investigation, claiming that Shargel had admitted to him that he was distracted by the investigation. Armienti testified that, while at counsel table, Shargel told Armienti that he was being investigated and that he was concerned about himself. Armienti further alleged that when he asked Shargel to notify the judge of the issue and to ask for a continuance, Shargel refused. Judge Johnson rejected this testimony, instead finding credible Shargel's testimony denying that such conversations occurred. Shargel's denials were also corroborated by both Lichtman and Corcella, neither of whom heard this alleged conversation.

Further, the trial record, Shargel's trial binder, and the testimony of the prosecutor demonstrate that Shargel was a vigorous, prepared advocate. Shargel hired a private investigator to collect information, located evidence to discredit witnesses, and comprehensively reviewed impeachment material provided by the Government prior to trial. Indeed, the prosecutor testified that those mistakes made by Shargel during the trial were a function of

normal human error. Thus, Armienti offered no convincing evidence that Shargel was conflicted in his representation of Armienti due to a failure to command respect or his inability to advocate effectively on Armienti's behalf.

Armienti attempts to liken his case to *Levy*, where this Court found an actual conflict of interest. In *Levy*, we found that the fact that Levy's attorney was being prosecuted on unrelated criminal charges by the same office prosecuting Levy was one of the factors that contributed to an actual conflict between Levy and his counsel. 25 F.3d at 156. In contrast to the attorney in *Levy*, Shargel was unaware that he was still the target of an investigation, and he was never prosecuted as a result of that investigation. Moreover, numerous other considerations informed our decision in *Levy*: the attorney in *Levy* represented both co-defendants in the case; the attorney possessed privileged information from his relationship with Levy's co-defendant that was directly relevant to Levy's defense; there existed a possibility that the attorney would be called as a trial witness; and the attorney may have participated in the flight of Levy's co-defendant. *Id.* at 156–57. None of these additional factors relied upon in *Levy* are present in this case.

Because Armienti has failed to demonstrate that Shargel was influenced by any alleged ties to the Gambino family or by the pending investigation, Armienti has failed to demonstrate an actual conflict wherein his interests and those of his lawyer diverged. As he established no actual conflict, we need not consider Armienti's arguments as to whether he was adversely affected. It is worth noting, however, that

**5.** The investigation concluded in September 1994 *without any charges being brought* against Shargel.

Armienti's principal claim in support of a finding of adverse effect is Shargel's failure to pursue a plea agreement. The facts surrounding Armienti's own refusal to pursue a plea agreement, however, negate the notion that it was a plausible alternative under the adverse effects standard. *See United States v. Yost,* No. 98 CR. 974, 2001 WL 536937, at *7 (S.D.N.Y. May 21, 2001) (explaining that pleading guilty is not a plausible defense strategy where there is no evidence that the defendant is willing to plead).[6]

## CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

**6.** Likewise, Armienti's other claim of adverse effect B that Shargel did not adequately cross-examine the Government's key witness, Kristine Kramer—is unpersuasive. The argument, if valid, could also bear upon whether there was an actual conflict of interest. His argument is faulty, however, both because the evidence shows that Shargel did attempt to discredit Kramer within the bounds of the Rules of Evidence and because Armienti does not explain any connection between Shargel's alleged failure to cross-examine Kramer and his other alleged loyalties and interests.