**Zolton WILLIAMS, Petitioner–Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 02–2198.

United States Court of Appeals, Second Circuit.

May 20, 2003.

Lawrence Mark Stern, New York, NY, for Appellant.

Peter A. Norling, Assistant United States Attorney (David C. James, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

Present: OAKES, WINTER, and KATZMANN, Circuit Judges.

### SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 20th day of May, two thousand three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED.**

Petitioner–Appellant appeals an order of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 for the reasons stated on the record in an oral decision rendered February 14, 2002. For the reasons that follow, we affirm the decision of the district court.

Williams was convicted by a jury on May 26, 1999, of conspiring to import cocaine, and importing cocaine, in violation of Title 21, United States Code, sections 952(a) and 963. At trial, the government's case primarily relied upon the testimony of Williams's two co-conspirators. At issue in this appeal is trial counsel's handing of two defense witnesses. The government introduced evidence that Williams had purchased a cooperative apartment in the Midwood neighborhood of Brooklyn in an all-cash transaction, which it claimed indicated unexplained wealth that could only be attributed to proceeds from the sale of drugs. During the defense case, Williams's mother testified that the money for the apartment purchase had come from an insurance settlement she had received a year prior to the purchase. She did not produce any documentary evidence to support her explanation, however, and the government argued in its summation that the lack of documentation provided a reason to disbelieve her entire testimony. Williams's mother subsequently located

the missing documentation, which supports her testimony.

Another part of the defense case was the alibi testimony of Michael Cummings, a former neighbor of Williams, who testified that he had telephoned Williams at a location in Jamaica inconsistent with the government's claims that Williams was elsewhere buying drugs at that time. After a brief recess, the government recalled Cummings to the stand for its rebuttal case, at which time he completely recanted his earlier testimony and testified that Williams had asked him to lie on his behalf. The jury convicted Williams on both counts, and within a day of the verdict trial counsel asked the court to relieve him. The district court granted his application and appointed William's current counsel. The conviction was affirmed. *United States v. Williams*, 205 F.3d 23 (2d Cir.), *cert. denied*, 531 U.S. 885, 121 S.Ct. 203, 148 L.Ed.2d 142 (2000).

Williams filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, claiming that his Sixth Amendment rights were violated by the ineffective assistance of his trial counsel. Specifically, Williams advances two arguments about his counsel's ineffectiveness: (1) that trial counsel had been ineffective in failing to cross-examine Cummings as to the truthfulness of his recantation; and (2) that trial counsel was ineffective in not sufficiently making clear to Williams's mother the importance of the documentary evidence, with the result that the government was able to suggest unexplained wealth in the face of the clear facts that the transaction was fully legal. The district court held a hearing on February 14, 2002, at which trial counsel testified. At the conclusion of this hearing, the district court denied the petition in an oral decision, but granted a certificate of appealability.

We review the District Court's decision to deny a habeas petition *de novo*. *Morris v. Reynolds*, 264 F.3d 38, 45 (2d Cir.2001), *cert. denied*, 536 U.S. 915, 122 S.Ct. 2381, 153 L.Ed.2d 199 (2002).

As to the first point, Williams argues that trial counsel labored under a conflict of interest such that he could not act as an effective counsel. "The right to counsel under the Sixth Amendment entails 'a correlative right to representation that is free from conflicts of interest.'" *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994) (quoting *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981)). A defendant has suffered ineffective assistance of counsel due to his lawyer's conflict of interest in one of three instances: (1) a "per se" conflict; (2) a potential conflict of interest that results in prejudice to the defendant; or (3) an actual conflict of interest that adversely affects the attorney's performance. *See Armienti v. United States*, 313 F.3d 807, 810 (2d Cir.2002) (citing *Levy*, 25 F.3d at 152). Williams contends that trial counsel suffered from both a *per se* and an actual conflict of interest.

The suggestion that his attorney had a *per se* conflict is meritless. This Court has only found a *per se* conflict in cases where the lawyer is "implicated in the crimes of his or her client." *United States v. Fulton*, 5 F.3d 605, 611 (2d Cir.1993); *accord United States v. Cancilla*, 725 F.2d 867, 869–70 (2d Cir.1984). There is no evidence in the record – nor does Williams allege – that the government made any suggestion whatsoever that trial counsel was involved in Cummings's perjury, or with Williams's alleged subornation of it.

To prevail on an "actual conflict" claim, a defendant must first show that an actual conflict existed, then demonstrate that this conflict adversely affected defense counsel's performance. *See Armienti*, 313 F.3d

at 811. Actual conflict will be found "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Id.* (quotations omitted). Once the defendant has established that an actual conflict exists, "he need not prove prejudice, but simply that a 'lapse in representation' resulted from the conflict." *United States v. Malpiedi,* 62 F.3d 465, 469 (2d Cir.1995) (quoting *United States v. Iorizzo,* 786 F.2d 52, 58 (2d Cir.1986)); *accord Armienti,* 313 F.3d at 811.

■ Williams's argument is primarily premised on counsel's statement, in his application to be relieved, that "Mr. Cummings' testimony ... potentially calls into question my conduct and therefore creates a conflict of interest that makes it impossible for me to represent Mr. Williams' interests effectively." The testimony at the hearing established that trial counsel's doubts about whether he might be implicated in his client's subornation of perjury did not arise until after he made the decision not to cross-examine Cummings about his recantation and not to seek a continuance to explore Cummings's story. Accordingly, Williams cannot establish that a conflict of interest existed.

Absent a showing of a conflict of interest, to prevail on a claim of ineffective assistance of counsel a defendant must (1) rebut a "strong presumption" that his attorney's performance was reasonable by showing that the representation failed to meet "an objective standard of reasonableness" according to "prevailing professional norms;" and (2) "affirmatively prove prejudice." *Strickland v. Washington,* 466 U.S. 668, 687–89, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001). The burden of showing that both these prongs have been met falls on the defendant. *See Strickland,* 466 U.S. at 687.

■ Measuring Williams's claim by the *Strickland* standard, he cannot demonstrate that trial counsel's performance fell below an objective standard of reasonableness. At the hearing, trial counsel testified that he had concluded that the best way to respond to Cummings's recantation was to get him off the stand as quickly as possible so as not to call the jury's attention to it by lingering on the issue of Cummings's truthfulness. He also testified that he was afraid that the government was in possession of additional damaging information, and that if he attempted to cross-examine Cummings further, more inculpatory evidence might emerge. Finally, he testified that he believed that Williams's best chance was to trust to whatever credibility the defense had established with the jury to persuade them to discount the cooperators' testimony. Accordingly, he chose not to mention Cummings's testimony in his summation.

It is well-settled that this Court will not find objectively unreasonable performance by a lawyer when the disputed choices were made pursuant to a rational trial strategy, however unsuccessful: "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." *United States v. Luciano,* 158 F.3d 655, 660 (2d Cir.1998) (per curiam); *see also United States v. Eisen,* 974 F.2d 246, 265 (2d Cir.1992) (no ineffective assistance despite defendant's claim that lawyer had failed to thoroughly impeach prosecution witnesses, because decisions as to nature and extent of cross-examination are strategic). Not only did Williams's trial attorney proffer a strategic explanation for his decisions, the experienced district court judge found it to be a sound strategy. The record discloses

no support for the proposition that trial counsel was objectively ineffective.

As to the second claim, trial counsel articulated a sound strategic reason for why he chose not to emphasize the purchase of the co-op. This claim must also fail.

The judgment of the district court is **AFFIRMED.**