Pepe v. Walsh

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand thirteen.

PRESENT: RALPH K. WINTER,
         DENNIS JACOBS,
         CHESTER J. STRAUB,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - - -X
VINCENT PEPE,
         Petitioner-Appellant,

         -v.-                          No. 12-2530

JAMES WALSH, Superintendent, Sullivan Correctional Facility,
         Respondent-Appellee.
- - - - - - - - - - - - - - - - - - - - - - -X

FOR PETITIONER-APPELLANT:    JILLIAN S. HARRINGTON, Monroe
                             Township, NJ.

FOR RESPONDENT-APPELLEE:     JODI A. DANZIG (Barbara D.
                             Underwood, Roseann B.
                             MacKechnie, on the brief) for
                             Eric T. Schneiderman, Attorney

1

General of the State of New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Suddaby, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Appellant Vincent Pepe appeals from the denial of his 28 U.S.C. § 2254 habeas petition. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Pepe's habeas petition raises contentious questions, including whether and to what extent evidence of counsel's ineffectiveness during state proceedings may be presented for the first time in federal district court; and the standard for evaluating an attorney conflict claim based on successive, rather than concurrent, representations. We need not reach these questions, however, because we conclude, as did the district court, that Pepe has made no showing of any prejudice or adverse effect, regardless of which record we consider and what standard we choose.

1. Pepe argues that he was denied effective assistance of counsel as a result of his pre-trial counsel's alleged conflicts of interest. Specifically, Pepe claims that George Aney and Joseph Hobika represented him before trial

2

while simultaneously representing prosecution witnesses in front of the grand jury.  Aney also later represented two prosecution witnesses at Pepe's trial.

"A defendant will have suffered ineffective assistance of counsel in violation of his Sixth Amendment rights if his attorney has . . . [1] a potential conflict of interest that *results in prejudice to the defendant*, or [2] an actual conflict of interest that *adversely affects the attorney's performance*."  Armienti v. United States, 313 F.3d 807, 810 (2d Cir. 2002) (emphasis added).  To demonstrate "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[; a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. 668, 694 (1984).  To show "adverse effect," a defendant must establish "that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  Armienti, 313 F.3d at 811 (internal quotation marks omitted).

Pepe has demonstrated neither prejudice nor adverse effect. His theories regarding the harm suffered by his defense are speculative and unsupported in any of the possible records before us.

First, Pepe argues that his pre-trial counsel's conflicts caused them to not pursue a pre-indictment plea or cooperation agreement on Pepe's behalf. But "failure to obtain a plea bargain is not evidence of ineffective assistance of counsel when the record," as here, "does not contain evidence that one might have been offered." Eisemann v. Herbert, 401 F.3d 102, 109 (2d Cir. 2005). Pepe's claim "that the prosecutor would have been receptive to a plea bargain is completely unsupported in the record." Burger v. Kemp, 483 U.S. 776, 785 (1987). The other direct participant in the murders was already cooperating and had taped Pepe making incriminating statements regarding his presence at the scene, possession of a gun, and cover-up. As Magistrate Judge Bianchini concluded, "it is difficult to envision a scenario in which the prosecution would have been interested in offering [Pepe] any meaningful benefit in exchange for his cooperation." Pepe v. Walsh, No. 04-CV-835 (GTS) (VEB), 2011 WL 7946234, at *20 (N.D.N.Y. Nov. 28, 2011); see also Armienti, 313 F.3d at 811. And it is by no means clear that Pepe would have accepted a pre-indictment

4

plea bargain if one had been offered, given his repeated claims of innocence and eventual decision to go to trial. Armienti, 313 F.3d at 815 ("The facts surrounding Armienti's own refusal to pursue a plea agreement, however, negate the notion that it was a plausible alternative under the adverse effects standard.").

Second, Pepe argues that because his pre-trial lawyers were conflicted, they failed to advise him of his right to testify in front of the grand jury. But Pepe *was* personally advised of his right to testify in front of the grand jury at his arraignment hearing. More importantly, waiving Fifth Amendment rights in an attempt to prevent indictment, given the strength of the prosecution's case here, is not a promising strategy. "[A]mple legitimate reasons existed for encouraging [Pepe] not to testify before the grand jury, separate and apart from any difficulties such testimony might have theoretically posed for Aney's other clients." Pepe, 2011 WL 7946234, at *21.

Third, Pepe argues that because his pre-trial lawyers were conflicted, they did or may have shared Pepe's confidences with the government and prosecution witnesses. But even the broadest view of the record provides no evidence of the extent or details of any such shared

5

confidences.  The evidence suggests that the prosecution witnesses were testifying based on personal knowledge.

2.  Pepe also claims that his post-indictment and trial counsel, Kenneth Ray, provided ineffective assistance. Because Ray is not alleged to have labored under any conflict, these claims are evaluated under the familiar Strickland standard and require a showing of both objectively deficient performance and resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 688, 693 (1984).

Pepe faults Ray for not subpoenaing Aney and Hobika in support of a pre-trial suppression motion.  However, Ray could reasonably have feared that both Aney and Hobika would have denied their representation of Pepe--as they in fact did years later at a district court evidentiary hearing. Their denials would almost certainly have *weakened* the case for suppression.[1]  And even if Ray's associate had testified (as Pepe now claims he would have) that Hobika admitted to representing Pepe, the suppression hearing would then have turned into a credibility contest between Pepe's

---

[1] Magistrate Judge Bianchini found Aney's and Hobika's testimony before the court untruthful; nevertheless, he explained that his later credibility determination "does not make Attorney Ray's strategic judgment in this regard retroactively unreasonable."  Pepe, 2011 WL 7946234, at *28 n.20.

current and past counsel.  Whether correct or not, the decision not to subpoena Aney or Hobika cannot be labeled objectively unreasonable.  See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess.  . . . [A]n appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken.").

Pepe also argues that Ray provided ineffective assistance by not moving to preclude testimony from prosecution witnesses at trial on the basis of the Aney/Hobika conflicts.  Even if Ray had objected, however, there is no evidence suggesting that the trial court would have precluded any relevant testimony.

Pepe was unlikely to tell the trial court exactly what confidences he shared with pre-trial counsel.  As the Magistrate Judge noted, Pepe "was *extremely* reluctant to disclose the confidences he allegedly shared with Aney" at a federal court habeas evidentiary hearing.  Pepe, 2011 WL 7946234, at *32.  At that hearing, Pepe's counsel moved to preclude any mention of such confidences as potentially self-incriminatory.  Id.

7

Nor does Pepe demonstrate that any objection to the testimony would have succeeded even if he had disclosed his confidences to the trial court. Pepe's theories regarding how his confidences were shared with prosecution witnesses by Aney and Hobika are speculative, convoluted, and unsupported in any available record. The case against Pepe was strong. His own highly incriminatory statements, some taped by his accomplice and some provided to the police directly by Pepe himself, constituted key evidence at trial. There is no "substantial" likelihood that, but for Ray's alleged ineffectiveness, a different result would have obtained. See Harrington v. Richter, 131 S. Ct. 770, 792 (2011) ("The likelihood of a different result must be substantial, not just conceivable.").

We have considered all of Pepe's remaining arguments and conclude that they are without merit. The judgment of the district court is hereby affirmed.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK