**UNITED STATES of America,**

v.

**Alan JACOBS, Petitioner–Defendant.**

**Nos. 5:08–CR–355, 5:14–CV–466.**

United States District Court,
N.D. New York.

Signed March 25, 2015.

2

Brian P. Barrett, Esq., Office of Brian P. Barrett, Lake Placid, NY, Attorneys for Petitioner–Defendant.

Carl G. Eurenius, Esq., Ass't United States Attorney, Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, for United States of America.

### MEMORANDUM—DECISION and ORDER

DAVID N. HURD, District Judge.

### I. INTRODUCTION

Petitioner—Defendant Alan Jacobs ("Jacobs" or "defendant") moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed on him following his plea of guilty to one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951 (the "Hobbs Act"). The United States of America (the "Government") opposed. The motion was considered on the basis of the submissions without oral argument.

### II. FACTUAL BACKGROUND [1]

On July 17, 2008, while he was on release and awaiting sentencing on a differ-

---

1. The factual narrative is derived from a re- view of the entire docket, including Jacobs's

ent matter, the Government indicted Jacobs for additional criminal conduct. In particular, this indictment alleged defendant conspired with others to take and obtain a large quantity of Canadian-grown marijuana and United States currency from the residence of Daniel Simonds against his will by means of actual and threatened force, violence, and fear of injury in violation of the Hobbs Act. Although the Government later filed a second superseding indictment in this matter, the charge against defendant remained unchanged. Stanley Cohen, Esq. ("Attorney Cohen"), the attorney who represented defendant in connection with the criminal matter on which he already awaited sentencing, entered an appearance on defendant's behalf in connection with this new charge.

On January 6, 2009, Attorney Cohen learned he was under investigation by federal officials, including the United States Attorney's Office for the Northern District of New York, when law enforcement agents executed search warrants at his home and law practice. Shortly thereafter, the Government filed a sealed application for a hearing to address any possible client-counsel conflicts of interest between Jacobs and Attorney Cohen stemming from this ongoing investigation. Donald Gerace, Esq. ("Attorney Gerace") was appointed as independent counsel to advise defendant of his right to conflict-free representation and explain the potential consequences of the Government's investigation into Attorney Cohen.

On February 12, 2009, a hearing was conducted pursuant to *United States v. Curcio*.[2] The record of the colloquy included, in relevant part, the following exchanges:

THE COURT: Mr. Jacobs, . . . . You have had an opportunity to consult with independent counsel I have appointed, Mr. Gerace?

THE DEFENDANT: Yes, sir.

THE COURT: Did he answer any questions you may have had regarding this?

THE DEFENDANT: Yes.

. . . .

[THE COURT]: And do you have any questions that you wish to ask of me?

THE DEFENDANT: No.

. . . .

THE COURT: How long have you known Mr. Cohen?

THE DEFENDANT: A little more than twelve years.

THE COURT: And he has represented you before?

THE DEFENDANT: Yes.

. . . .

THE COURT: Has he represented you on other matters besides criminal cases?

THE DEFENDANT: Yes.

THE COURT: Has he represented your family on matters?

THE DEFENDANT: Yes.

THE COURT: Now, did you get some advice from Mr. Gerace and talked with him and ask him any questions you may have had?

THE DEFENDANT: Yes. He answered all my questions.

THE COURT: Good. Are you prepared to make a decision now as to whether or not you want to waive your right to a non-conflicted counsel and continue with Mr. Cohen?

THE DEFENDANT: Yes.

various motion papers as well as the Government's filings in opposition.

2. The *Curcio* hearing was conducted to address conflicts in both of Jacobs's pending criminal matters.

THE COURT: What is your decision?

THE DEFENDANT: I would like to waive.

. . . .

THE COURT: Did anyone put any pressure on you to stay with Mr. Cohen[?]

THE DEFENDANT: No.

THE COURT: Mr. Gerace, have you had an opportunity to discuss this matter with Mr. Jacobs[?]

MR. GERACE: Yes, Your Honor. Mr. Jacobs and I did discuss. . . . The fact that Mr. Cohen . . . is a target of an investigation, and there is a potential conflict of interest—or an actual conflict of interest is there, excuse me, with respect to that situation.

[Jacobs] and I did speak about different possible scenarios and things of that nature. I believe I answered all of [his] questions. I asked him if he had anything further he wanted to ask me. We spoke at length for approximately forty-five minutes to an hour about this. I would say about forty-five minutes.

And it is my understanding based upon what [Jacobs] has indicated to me, as well as what he has just indicated to the Court, that he understands that he has the ability to . . . seek other counsel or ask the Court to appoint counsel. . . .

[Jacobs] knows that the Court has given him the opportunity to think about this and adjourn the matter for a week in case he wanted to discuss the matter with other people that he seeks counsel from, such as family members. . . .

THE COURT: Is that all correct?

THE DEFENDANT: Yes.

THE COURT: And so you don't need a week or anything to make a decision on this matter?

THE DEFENDANT: No.

. . . .

THE COURT: And . . . did [you] talk to Mr. Cohen about the issues that were raised here?

THE DEFENDANT: Yes.

THE COURT: He has had some conferences with you, I understand, and he has explained his point of view as far as the investigation against him?

THE DEFENDANT: Yes.

. . . .

THE COURT: Do you freely and intelligently waive your right to non-conflicted counsel and agree to stay with Mr. Cohen?

THE DEFENDANT: Yes.

*See generally* Def.'s Mem., Ex. B, ECF No. 167, 25–33 ("Transcript of *Curcio* Hearing").[3]

Attorney Cohen remained Jacobs's attorney in both criminal matters. Thereafter, defendant entered into a plea agreement with the Government to resolve the Hobbs Act charge and was later sentenced principally to a term of 240 months' imprisonment. Defendant filed a timely notice of appeal.

On June 14, 2012, approximately three months after the Hobbs Act charge against Jacobs was resolved, the Government indicted Attorney Cohen in the Northern District of New York. In general, this indictment alleged that Cohen regularly received payments to, and paid expenses for, his law practice in sums of cash for which he failed to report, maintain records, or file appropriate income tax returns between 2003 and 2010. A similar indictment filed in the Southern District of New York charged Cohen with willful failure to file income tax returns, as well as wire fraud in connection with these efforts,

---

**3.** Pagination corresponds to that assigned by CM/ECF.

arising out of substantially the same conduct occurring over a period of time between 2005 and 2012. Cohen eventually pleaded guilty to certain counts in each indictment.

By mandate issued February 21, 2013, the U.S. Court of Appeals for the Second Circuit dismissed Jacobs's appeal of the Hobbs Act conviction for failure to comply with various procedural requirements. This collateral attack followed.

## III. *LEGAL STANDARDS*

### A. *28 U.S.C. § 2255*

■ 28 U.S.C. § 2255 permits a court to "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." This section limits claims to those that allege "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a). Accordingly, collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." *Graziano v. United States,* 83 F.3d 587, 590 (2d Cir.1996) (citation and internal quotation marks omitted).

■ A § 2255 petitioner bears the burden of proving his claim by a preponderance of the evidence. *See Triana v. United States,* 205 F.3d 36, 40 (2d Cir. 2000). However, "[a]iry generalities, conclusory assertions[,] and hearsay statements will not suffice" to meet this standard, since none of these would be considered admissible at a hearing.

*United States v. Aiello,* 814 F.2d 109, 113 (2d Cir.1987). Nor is a reviewing court required to credit factual assertions that are "contradicted by the record in the underlying proceeding." *Puglisi v. United States,* 586 F.3d 209, 214 (2d Cir.2009).

### B. *Ineffective Assistance of Counsel*

An ineffective assistance claim requires a petitioner to show: "(1) that his attorney's performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kieser v. New York,* 56 F.3d 16, 18 (2d Cir.1995) (per curiam) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

A court evaluating the first prong—whether counsel's performance fell below an "objective standard of reasonableness—should be "highly deferential"; that is, a petitioner must overcome the strong presumption that, "under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone,* 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

The prejudice prong requires a petitioner to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In this context, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* This prong "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003) (citation omitted).

## IV. *DISCUSSION*[4]

Jacobs's § 2255 petition alleges he suffered constitutionally ineffective assistance of counsel at the hands of Attorney Cohen as a result of a client-counsel conflict of interest that was so severe as to be unwaivable; alternatively, defendant claims Cohen's false explanation regarding the federal investigation into his affairs rendered defendant's decision to waive the client-counsel conflict at the *Curcio* hearing unknowing and involuntary.

■■ "A defendant's Sixth Amendment right to the effective assistance of counsel includes the right to representation by conflict-free counsel." *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir.2005) (quoting *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir.2002)). This right may be violated where an attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (citations omitted).

■ Importantly, however, "only 'actual' conflicts are unwaivable 'and, even then, only if they are so severe as to (a) indicate per se ineffective assistance of counsel or, (b) be analogous to *per se* ineffectiveness in the conflict's 'breadth and depth.'" *United States v. Perez*, 325 F.3d 115, 131–32 (2d Cir.2003) (Raggi, J., concurring) (citations omitted). In other words, any client-counsel conflict that is not so severe in its character or scope as to be considered a *per se* conflict may still be waived provided it is knowingly and intelligently done. *Id.*

## A. *Per Se Conflict*

■ Jacobs first argues the client-counsel conflict in his case was so severe as to be unwaivable. In particular, defendant asserts he was an "unwitting participant" in Attorney Cohen's attempts to "obstruct and impede the federal revenue laws." Def.'s Mem. 12.

■ It is true that some conflicts are so severe that they are "deemed *per se* violations of the Sixth Amendment. Such violations are unwaivable and do not require a showing that the defendant was prejudiced by his representation." *United States v. Williams*, 372 F.3d 96, 102 (2d Cir.2004). However, a *per se* conflict only exists where "trial counsel is not authorized to practice law" or where "trial counsel is implicated in the same or closely related criminal conduct for which the defendant is on trial." *Id.* (citations and internal quotation marks omitted).

Neither scenario applies here. Jacobs attempts to demonstrate the existence of a *per se* conflict by claiming a "direct link" between himself and Attorney Cohen's criminal conduct—he asserts that he made a number of cash payments to Cohen and that, when these payments exceeded $10,000, Cohen "would often tell [him] to bundle the cash in stacks of $10,000." Def.'s Mem., Ex. A, ECF No. 167, ¶ 5 ("Jacobs Decl.").

■ But this argument slightly misstates the standard. It is not satisfied by simply identifying some act of the defendant that may later turn out to be somehow related to his attorney's criminal behavior. Rather, the "direct link" that

---

**4.** Jacobs filed identical motions for collateral relief on the dockets of both of his criminal cases in the Northern District of New York. The Government responded in kind by filing a single, consolidated response memorandum on both dockets. However, this decision's analysis is confined to defendant's claim for collateral relief related to the 5:08–CR–355 action.

must be established is between the attorney's criminal conduct and the criminal conduct *for which the defendant is on trial.* In this case, Jacobs was indicted for conspiring to commit a robbery; Attorney Cohen was indicted for failure to report cash payments he received and for impeding an investigation into that failure by neglecting to keep proper records of those payments.

There is nothing inherently unlawful about the receipt of cash payments in exchange for legal services or, for that matter, even in directing a client to bundle stacks of cash payments in amounts of $10,000. A searching review of Jacobs's declaration reveals nothing to suggest he knew, or was in a position to know, that Attorney Cohen was failing to file certain documents in connection with his receipt of these cash payments—the unlawful aspect of Cohen's conduct.

 "The Second Circuit has repeatedly noted the limited reach of the *per se* rule." *United States v. Peterson,* 233 F.Supp.2d 475, 489 (E.D.N.Y.2002) (citations and explanatory parentheticals omitted). Simply put, a *per se* conflict does not arise every time an attorney engages in *any* criminal activity during a period of representation, even if that activity may have "unwittingly" involved the client in some tangential way. *See United States v. Pizzonia,* 415 F.Supp.2d 168, 182 (E.D.N.Y.2006) ("If defense counsel is allegedly involved in crimes that are not substantially related to the charges against the defendant, waiver is permitted." (collecting cases)); *see also United States v. Carbonaro,* 186 Fed.Appx. 41, 43 (2d Cir.

2006) (summary order) (finding no *per se* conflict because defendant's attorneys "were not unlicensed and did not engage in [defendant's] crimes" even where the conduct for which the attorneys were charged related to how they handled the finances of their practice, including finances related to that particular defendant).

Attorney Cohen's criminal activity is not linked to the mere receipt of cash payments by Jacobs and others but rather his failure to pay taxes on, and keep records of, these payments. Defendant has not submitted anything to suggest he had knowledge of, or was involved in, this unlawful aspect of Cohen's receipt of cash payments. Because this conduct is certainly not "the same or closely related" to defendant's conspiracy to commit a robbery, a *per se* conflict did not exist. Accordingly, this ground for relief will be denied.[5]

## B. *Actual Conflict of Interest*

Jacobs next argues an actual conflict of interest existed because the criminal investigation into Attorney Cohen created "an incentive [for him] to curry favor with the U.S. Attorney's office at [defendant's] expense." Def.'s Mem. 14.

 "To prevail on a Sixth Amendment claim based upon the actual conflict standard, a defendant must show that an actual conflict existed and, then, must demonstrate that this conflict adversely affected defense counsel's performance." *Armienti v. United States,* 313 F.3d 807, 811 (2d Cir.2002) ("*Armienti II* "). "An actual conflict between a lawyer and his client exists when, during the course of the

---

5. In a footnote, Jacobs suggests Attorney Cohen may have been part of a larger marijuana distribution conspiracy and attaches an attorney declaration filed in an unrelated case in the Eastern District of New York claiming as much. Def.'s Mem. 13, n. 3. However, as

defendant only notes that he "reserves the right to amend his [m]otion" if "facts arise to substantiate [that attorney's] assertions," he is understood to not be raising such a claim here.

representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Id.* (citation and internal quotation marks omitted).

If a defendant can establish the existence of an actual conflict, he must then "demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Armienti II,* 313 F.3d at 811. (citations and internal quotation marks omitted).

As an initial matter, Jacobs continues to press his claim that, beyond simply "currying favor" with the U.S. Attorney's Office, Attorney Cohen's failure to disclose that his "criminal activities were directly linked to [defendant] and the charges against him" suffices to demonstrate an actual conflict. Def.'s Mem. 17. But as just discussed, Cohen's failure to report this income is not "directly linked" or "closely related to" defendant's Hobbs Act robbery conspiracy. Accordingly, this aspect of defendant's argument is rejected.

The appropriate question, then, is whether Jacobs has plausibly alleged the existence of an actual conflict based on the fact the same U.S. Attorney's Office in charge of prosecuting him was also involved in an investigation into his attorney's unrelated criminal activity. Defendant cites to two Second Circuit cases for the ostensibly obvious proposition that an actual conflict exists whenever this scenario presents itself. *See* Def.'s Mem. 13 (citing *Armienti v. United States,* 234 F.3d 820, 824–25 (2d Cir.2000) ("*Armienti I*") *and United States v. Levy,* 25 F.3d 146, 156 (2d Cir.1994)) (explanatory parentheticals omitted). But as the Government correctly explains, the reasoning in these two cases is far more nuanced than defendant suggests.

Jacobs is correct that the Second Circuit initially acknowledged that the criminal defendant in *Armienti I* had presented a "plausible claim" of an actual conflict of interest with his lawyer where he was being investigated by the same U.S. Attorney's Office that was prosecuting the defendant. 234 F.3d at 824. Importantly, however, the plausibility of this initial claim hinged on the defendant's ability to allege "numerous instances of specific deficiencies"; such as the lawyer's failure to: (1) further investigate certain matters; (2) vigorously cross-examine certain witnesses; (3) make certain investigations; (4) devote sufficient to time his representation of the defendant; (5) prepare appropriately and direct sufficient attention to the defendant's case at trial; and (6) correctly advise the defendant to speak with the probation department prior to his sentencing. *Id.* at 825. Based on these allegations, the Second Circuit remanded the claim for an evidentiary hearing. *Id.*

On remand, the district court again concluded the defendant had failed to identify an actual conflict of interest. *Armienti II,* 313 F.3d at 810. In affirming, the Second Circuit explained that the mere fact a defendant's attorney was being prosecuted on "unrelated criminal charges" by the same U.S. Attorney's Office was not the end of the conflict inquiry. *Id.* at 814. Rather, citing *Levy,* the Court explained this was simply "one of the factors that contributed to an actual conflict" in that case. *Id.* In particular, the *Armienti II* Court noted the "numerous other considerations" that informed its decision in *Levy,* including: (1) that Levy's attorney represented both co-defendants in the case; (2) that the attorney possessed privileged information arising from his representation of the co-defendant that was directly rele-

vant to Levy's defense; (3) the possibility the attorney would be called as a trial witness; and (4) the possibility that the attorney may have aided in the flight of Levy's co-defendant. 313 F.3d at 814. The Court emphasized that "[n]one of the[ ] additional factors relied upon in *Levy* are present" in *Armienti II. Id.*

The same could be said here. Jacobs has not alleged that any of the considerations identified in *Levy* existed in his case. Nor has he made the sort of claims that were alleged in *Armienti I* to suggest some sort of systemic deficiency in Attorney Cohen's conduct requiring further evidentiary proceedings. Rather, defendant makes two, general claims: (1) he could have given the Government "valuable information" about Cohen's cash dealings in exchange for a "withdrawal of the charges against her [*sic*] or a reduction in the sentence recommended by the [G]overnment"; and (2) Attorney Cohen discouraged him from proceeding to trial. Def.'s Mem. 15; Jacobs Decl. ¶ 11.

Even taken together, these two allegations are insufficient to state a plausible claim for relief. First, and as already discussed at length, Jacobs has made no claim that he knew, or was ever in a position to know, that Attorney Cohen routinely neglected to record or pay income taxes on cash payments Cohen received from him or any other clients. Absent that sort of allegation, defendant cannot claim he knew any "valuable information" about Attorney Cohen's criminal conduct that would be of interest to the U.S. Attorney's Office.

Second, attorneys routinely discourage clients from proceeding to trial for myriad valid reasons. Here, there are no additional allegations that suggest Cohen's attempts to discourage Jacobs from proceeding to trial were anything other than sound advice. Defendant does not allege that Attorney Cohen actually prevented him, or even attempted to prevent him, from going to trial on the Hobbs Act charge. It is also notable that, in this case, Attorney Cohen had actually succeeded in negotiating a plea agreement with the Government even though defendant had already pleaded guilty in the prior criminal matter without even the slight benefits provided by such an agreement. All of these facts, especially when considered in light of the complete absence of any indication that Cohen's conduct was akin to that of the attorney in *Levy* or to that alleged in *Armienti I* which warranted further proceedings, combine to direct denial of defendant's claim.

## C. *Waiver*

■■ Finally, Jacobs claims Attorney Cohen's false explanation regarding the federal investigation into his affairs—that it was "little more than government harassment" for representing "Middle Eastern Terrorists"—rendered his waiver invalid. Def.'s Mem. 4, 16.

■■ Generally, "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant." *Perez*, 325 F.3d at 125 (citation omitted); *Pizzonia*, 415 F.Supp.2d at 183–84 ("In the absence of a strong connection between the activity for which counsel is investigated and defendant's charges, defendant may generally waive a conflict stemming from a criminal investigation of his attorney."). Indeed, where a court "determine[s] that the 'attorney suffers from a lesser [actual] or only a potential conflict,' then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney

of his choice." *Id.* (quoting *Levy,* 25 F.3d at 153).

Even crediting these assertions regarding Attorney Cohen's mischaracterization of the Government's investigation into his affairs, Jacobs's argument does not entitle him to the relief he seeks. A careful review of defendant's motion papers and supporting declaration notably ignore a crucial aspect of the *Curcio* hearing conducted in this case—the fact that Attorney Gerace was appointed as independent, conflict-free counsel to assist defendant in determining whether he desired to waive the client-counsel conflict stemming from the Government's investigation into Cohen.

Of course, Jacobs's omission of Attorney Gerace's involvement likely stems from the simple reality that his independent discussions with defendant eliminate any possibility that some degree of confusion stemming from Attorney Cohen's misguided opinion about the nature of the Government's investigation could rise to the level of a constitutional violation. This is especially so where, as here, defendant's motion papers make no allegations about any allegedly false, misleading, or insufficient explanations stemming from Attorney Gerace's counsel. Nor could they:

> THE COURT: Mr. Gerace, have you had an opportunity to discuss this matter with Mr. Jacobs[?]
>
> MR. GERACE: Yes, Your Honor. Mr. Jacobs and I did discuss.... **The fact that Mr. Cohen ... is a target of an investigation, and there is a potential conflict of interest—or an actual conflict of interest** is there, excuse me, with respect to that situation.
>
> **[Jacobs] and I did speak about different possible scenarios and things of that nature. I believe I answered all of [his] questions.** I asked him if he had anything further he wanted to ask me. We spoke at length for approximately forty-five minutes to an hour about this. I would say about forty-five minutes.
>
> And it is my understanding based upon what [Jacobs] has indicated to me, as well as what he has just indicated to the Court, that **he understands that he has the ability to ... seek other counsel or ask the Court to appoint counsel....**
>
> [Jacobs] **knows that the Court has given him the opportunity to think about this and adjourn the matter for a week** in case he wanted to discuss the matter with other people that he seeks counsel from, such as family members....

*See generally* Transcript of *Curcio* Hearing (emphases added). After conducting this colloquy with Attorney Gerace, the Court again confirmed Jacobs's desire to waive the conflict arising from the U.S. Attorney's Office's investigation into Attorney Cohen:

> THE COURT: Is [what Attorney Gerace just recounted] all correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And so you don't need a week or anything to make a decision on this matter?
>
> THE DEFENDANT: No.
>
> ....
>
> THE COURT: And ... did [you] talk to Mr. Cohen about the issues that were raised here?
>
> THE DEFENDANT: Yes.
>
> THE COURT: He has had some conferences with you, I understand, and he has explained **his point of view** as far as the investigation against him?
>
> THE DEFENDANT: Yes.
>
> ....
>
> THE COURT: Do you freely and intelligently waive your right to non-conflicted

counsel and agree to stay with Mr. Cohen?

THE DEFENDANT: Yes.

*Id.* (emphasis added).

■ There was never an indication that the federal criminal investigation into Attorney Cohen would somehow jeopardize the integrity of judicial proceedings against Jacobs. *See Perez,* 325 F.3d at 125 ("The courts do, of course, retain discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings."). "[A]bsent such institutional concerns, courts will not 'assume too paternalistic an attitude in protecting the defendant from himself,' and although the defendant's choice of counsel 'may sometimes seem woefully foolish' to the court, the choice remains his." *Id.* (quoting *U.S. v. Curcio,* 694 F.2d 14, 25 (2d Cir.1982)).

Jacobs may have ultimately elected to stay with Attorney Cohen because of a degree of comfort stemming from his prior representations, but the record reveals that defendant did not make that choice unknowingly. Rather, defendant chose to remain with Attorney Cohen after independent counsel, appointed by the Court, made him fully aware that Cohen was under investigation by the same U.S. Attorney's Office prosecuting the Hobbs Act charge against him and that he had a constitutional right to have conflict-free counsel retained or appointed on his behalf.

Jacobs now claims that no one disclosed the "true" nature of Attorney Cohen's criminal activity. But the law requires disclosure of the nature of the conflict, not the nature of the Government's investigatory activity. Here, the disclosure obligation was satisfied when defendant became aware there was a criminal investigation into Cohen in which the same U.S. Attorney's Office prosecut-

ing him was involved. Such a claim of ignorance may have helped establish a plausible claim to a *per se* conflict if Cohen had ultimately been charged with involvement in defendant's crimes. It may even have supported a claim to an actual conflict if, for instance, defendant had also plausibly identified the sort of systemic failures alleged in *Armienti II* and found in *Levy.* But it is of no help to him here. Accordingly, this ground for relief will be denied.

## V. CONCLUSION

Jacobs has failed to show that Attorney Cohen's unrelated criminal activity gave rise to a *per se* conflict. Likewise, defendant has failed to identify any factors to suggest an actual conflict existed in this case. Finally, defendant's conclusory assertions about the unknowing nature of his waiver are flatly contradicted by the record of the *Curcio* hearing. In sum, none of defendant's arguments amount to a "plausible claim" of ineffective assistance of counsel and therefore an evidentiary hearing is not required. *See Morales v. United States,* 635 F.3d 39, 45 (2d Cir. 2011); *Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir.2009). And because defendant has failed to make a "substantial showing of the denial of a constitutional right," a certificate of appealability will not be issued. 28 U.S.C. § 2253(c).

Therefore, it is

ORDERED that

1. Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED; and

2. A certificate of appealability will not be issued.

IT IS SO ORDERED.